UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

OTHIEL ROSA, JONAH SILVA, and JESUS    :
SANDOZ, on behalf of themselves and others   :
similarly situated,    :    **MEMORANDUM**
      :    **DECISION AND ORDER**
          Plaintiffs,   :
      :    20-cv-3672 (BMC)
      -against-   :
      :
VEERU DHILLON; JAMAICA FUEL, INC.;   :
JOHN DOE No. 1; and JOHN DOE No. 2,   :
      :
          Defendants.   :

------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs Othiel Rosa, Jonah Silva, and Jesus Sandoz have brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"), § 650 et seq., against Veeru Dhillon and Jamaica Fuel, Inc., their former employers. Plaintiffs worked as attendants at the gas station located at 292 Ashburton Avenue in Yonkers, New York ("the Ashburton Avenue station"). They allege that defendants failed to pay minimum wage and overtime. Before the Court are two motions.

First, defendants have moved to dismiss the FLSA minimum wage claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In defendants' view, plaintiffs cannot seek relief under the FLSA if they made more than the federal minimum wage but less than the state minimum wage. I agree. Based on the text and structure of the FLSA and its implementing regulations, I conclude that a violation of state minimum wage laws does not itself create a minimum wage claim under the FLSA. Therefore, the motion to dismiss is granted.

Second, plaintiffs have moved for conditional certification of a collective action and court-facilitated notice under the FLSA. They have proposed a collective consisting of all gas station attendants who worked at all of defendants' stations in the State of New York. Although plaintiffs have not yet established that they are similarly situated to that broad group of employees, plaintiffs have met their minimal burden when it comes to the other attendants at their station. Therefore, the motion is granted in part.[1]

## BACKGROUND

As attendants at the gas station, plaintiffs would pump gas, collect money, accept deliveries, and perform other related tasks. Sandoz began working there in 2017. Rosa and Silva joined two years later. All three allege that they received no overtime, despite working more than 40 hours per week. The specificity varies. Silva alleges that he worked more than 40 hours per week only "on occasion." Rosa alleges that he "routinely worked in excess of 40 hours per week," providing specific examples from specific weeks. And Sandoz alleges that he worked 51 hours every week. All three plaintiffs claim to have received a flat rate of pay. It fluctuated throughout their employment, ranging between $8 and $12 per hour.

According to the amended complaint, Veeru Dhillon uses Jamaica Fuel and other corporate entities to "operate his gas station business," employing "at least 50 gas station employees" throughout the State of New York. The business constitutes a "single integrated enterprise" operating out of a central office in Long Island. There, Dhillon's "sons or nephews" – known only as "Gary" and "Karan" – serve as the "executive-level employees," alongside an

---

[1] Two other pending motions are disposed of as follows. First, plaintiffs' motion for leave to file an amended complaint [21] is denied as unnecessary since plaintiffs have amended as of right under Federal Rule of Civil Procedure 15(a)(2). Second, defendants' motion to dismiss the original complaint [17] is denied as moot in light of the amended complaint.

"administrative-level employee" named "BK Sangha." Together, these individuals control hiring and firing, process the payroll, and set the terms of employment.[2]

Plaintiffs also allege that defendants transfer employees between the gas stations. For instance, when Dhillon notified Rosa that he would "no longer operate" the Ashburton Avenue station, he offered to transfer Rosa to a station "in Hunts Point, Bronx" or one "in Long Island." Similarly, plaintiffs allege that they met an employee named "Jassy" who defendants transferred to the Ashburton Avenue station from a station at 1081 Leggett Avenue in the Bronx ("the Leggett Avenue station"). Jassy allegedly reported that other employees were paid below the minimum wage and did not receive overtime.

After plaintiffs left their jobs at the gas station, they brought this suit under the FLSA and the NYLL, alleging minimum wage and overtime violations of both statutes. Plaintiffs added several NYLL-specific claims, and Sandoz brought his own FLSA retaliation claim, but those claims are not at issue here.

## DISCUSSION

### I.      Motion to Dismiss the Amended Complaint

Defendants' argument is straightforward. Plaintiffs allege that they made between $8 and $12 per hour, but at all relevant times, the federal minimum wage was $7.25 per hour. And if plaintiffs were paid above the federal minimum wage, the argument goes, plaintiffs have no claim under the FLSA, even if they made below the New York minimum wage.

As a practical matter, an employer must "pay employees at least the federal minimum wage for every hour worked, or the state minimum wage, if it is greater than the federal minimum wage." Lopez v. Emerald Staffing, Inc., No. 18-cv-2788, 2020 WL 915821, at *8

---

[2] Plaintiffs have named two John Doe defendants who they allege are Gary and Karan.

(S.D.N.Y. Feb. 26, 2020) (citing 29 U.S.C. §§ 206, 218(a)).  Accordingly, many courts have

stated that the FLSA requires an employer to pay the state minimum wage.  See, e.g., Payamps v.

M & M Convenience Deli & Grocery Corp., No. 16-cv-4895, 2019 WL 8381264, at *7

(E.D.N.Y. Dec. 9, 2019).  But despite the ubiquity of these statements, a holding to that effect is

harder to find.[3]

Moreover, the text of the statute strongly suggests that plaintiffs cannot recover for state-

law violations.  Start with 29 U.S.C. § 206(a), which addresses the minimum wage.  Subject to

certain exceptions not relevant here, it requires every employer to "pay to each of his employees

. . . wages at . . . $7.25 an hour."  § 206(a)(1)(C).  Nothing in this section provides that paying a

wage above $7.25 an hour would violate the FLSA, even if state law required otherwise.

The FLSA does address state law in 29 U.S.C. § 218(a), known as the "savings clause."

See, e.g., Chen v. St. Beat Sportswear, Inc., 364 F. Supp. 2d 269, 293 n.40 (E.D.N.Y. 2005).

That section states:

> No provision of this chapter or of any order thereunder shall excuse
> noncompliance with any Federal or State law or municipal ordinance establishing
> a minimum wage higher than the minimum wage established under this chapter or
> a maximum work week lower than the maximum workweek established under
> this chapter, and no provision of this chapter relating to the employment of child
> labor shall justify noncompliance with any Federal or State law or municipal
> ordinance establishing a higher standard than the standard established under this
> chapter.  No provision of this chapter shall justify any employer in reducing a
> wage paid by him which is in excess of the applicable minimum wage under this
> chapter, or justify any employer in increasing hours of employment maintained by
> him which are shorter than the maximum hours applicable under this chapter

29 U.S.C. § 218(a).  This passage "simply makes clear that the FLSA does not preempt any

existing state law that establishes a higher minimum wage or a shorter workweek than the federal

---

[3] Lopez assumed that the plaintiffs could recover under the FLSA even though they made more than the federal
minimum wage, but the case involved a default judgment and the court did not specifically address the issue.
See 2020 WL 915821, at *2, 8–11.

statute."  Cosme Nieves v. Deshler, 786 F.2d 445, 452 (1st Cir. 1986); accord Williamson v.

Gen. Dynamics Corp., 208 F.3d 1144, 1151 (9th Cir. 2000).  But it's one thing to say that the

FLSA does not preempt state law; it's quite another to say that the FLSA incorporates state law.

See Cosme Nieves, 786 F.2d at 452.  Plaintiffs must look elsewhere.

To that end, plaintiffs point to a regulation from the Department of Labor which

provides:

> Various Federal, State, and local laws require the payment of minimum hourly,
> daily or weekly wages different from the minimum set forth in the Fair Labor
> Standards Act, and the payment of overtime compensation computed on bases
> different from those set forth in the Fair Labor Standards Act.  Where such
> legislation is applicable and does not contravene the requirements of the Fair
> Labor Standards Act, nothing in the act, the regulations or the interpretations
> announced by the Administrator should be taken to override or nullify the
> provisions of these laws.  Compliance with other applicable legislation does not
> excuse noncompliance with the Fair Labor Standards Act.  Where a higher
> minimum wage than that set in the Fair Labor Standards Act is applicable to an
> employee by virtue of such other legislation, the regular rate of the employee, as
> the term is used in the Fair Labor Standards Act, cannot be lower than such
> applicable minimum, for the words "regular rate at which he is employed" as used
> in section 7 must be construed to mean the regular rate at which he is lawfully
> employed.

29 C.F.R. § 778.5.  Like the statute's savings clause, this regulation addresses preemption.  To

the extent it incorporates state law, it does so for a limited purpose – calculating the "regular

rate" of the employee for purposes of an overtime claim.  See 29 U.S.C. § 207(a)(1).  This

regulation appears in a part of the federal register addressing overtime compensation, see

§ 778.0–778.603, and there is no corresponding regulation for minimum wage compensation.

For these reasons, courts around the country have concluded that, "for non-overtime

wages, the FLSA requires only that employers pay the minimum wage rates set by *federal* law."

Gurung v. Malhotra, 851 F. Supp. 2d 583, 592 (S.D.N.Y. 2012) (quoting Pineda-Herrera v. Da-

Ar-Da, Inc., No. 09–cv–5140, 2011 WL 2133825, at *5 (E.D.N.Y. May 26, 2011)); see also

Bruns v. Mun. of Anchorage, 182 F.3d 924, 1999 WL 288910, at *2 (9th Cir. May 10, 1999);

Fast v. Applebee's Int'l, Inc., No. 06-cv-4146, 2009 WL 2391775, at *7 (W.D. Mo. Aug. 3,

2009); McElmurry v. US Bank Nat. Ass'n, No. 04-cv-642, 2005 WL 2078334, at *4 (D. Or.

Aug. 24, 2005), report and recommendation adopted, 2005 WL 2492932 (D. Or. Oct. 7, 2005);

cf. Lanzetta v. Florio's Enterprises, Inc., No. 08-cv-6181, 2011 WL 3209521, at *1–4 (S.D.N.Y.

July 27, 2011) (Chin, J.) (reaching this conclusion when addressing liquidated damages).  As one

court summarized:

> While the FLSA clearly provides that states and municipalities may enact laws
> providing for more generous minimum wages, and while the FLSA clearly
> provides that compliance with the FLSA minimum wage does not excuse
> noncompliance with a state or municipal minimum wage, there is no support for
> plaintiffs' argument that the failure to pay that more generous minimum wage
> states a FLSA minimum wage violation.  Such failure may trigger a violation of
> the relevant state or municipal law, but it does not, by itself, support a federal
> minimum wage FLSA claim.

McElmurry, 2005 WL 2078334, at *4 (D. Or. Aug. 24, 2005).  I agree.  Because plaintiffs allege

that their wages surpassed the federal minimum wage, plaintiffs cannot state a minimum wage

claim under the FLSA.  I therefore grant the motion to dismiss. [4]

## II.    Collective Action Motion

### A.    Approval to Proceed with a Collective Action

The FLSA authorizes employees to bring a collective action to recover unpaid minimum

wage and overtime compensation on behalf of themselves and similarly situated employees.

See 29 U.S.C. § 216(b).  Because similarly situated employees can become plaintiffs only by

---

[4] This decision has little practical effect on plaintiffs' ability to seek redress for the alleged minimum wage
violations, as defendants do not challenge plaintiffs' NYLL claims.  However, the dismissal of plaintiffs' FLSA
minimum wage claims means that any FLSA collective can only cover FLSA overtime claims.

I am reserving decision on whether the continuing exercise of supplemental jurisdiction is appropriate in light of the
dismissal of the FLSA minimum wage claims.  See 28 U.S.C. § 1367(c)(2).

filing written consent with the court, see id., courts have discretion to facilitate notice to those

employees, see Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989). This process is

often referred to as certification, see, e.g., Weng v. Kung Fu Little Steamed Buns Ramen, Inc.,

No. 17-cv-273, 2018 WL 1737726, at *2 (S.D.N.Y. March 26, 2018), though I prefer to refer to

it as approval to proceed with a collective action to distinguish it from certification of class

actions under Federal Rule of Civil Procedure 23.

When determining whether to approve a collective action, courts in the Second Circuit

conduct a two-step process. See Myers v. Hertz Corp., 624 F.3d 537, 554–55 (2d Cir. 2010).

First, in a step referred to as conditional certification, the court "mak[es] an initial determination

to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs

with respect to whether a FLSA violation has occurred." Id. at 555 (quotation omitted). Second,

"the district court will, on a fuller record, determine whether a so-called collective action may go

forward by determining whether the plaintiffs who have opted in are in fact similarly situated to

the named plaintiffs." Id. (quotation omitted).

This case is at the first stage. Plaintiffs must "make a modest factual showing that they

and potential opt-in plaintiffs together were victims of a common policy or plan that violated the

law." Id. (quotation omitted). "[T]he focus of the inquiry is not on whether there has been an

actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . .

with respect to their allegations that the law has been violated." Romero v. La Revise Assocs.,

LLC., 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013) (quotation omitted). Specifically, plaintiffs

"must show a factual nexus . . . between the plaintiff[s'] situation and the situation of other

potential plaintiffs," which plaintiffs can achieve through "pleadings, affidavits, and

declarations." Fernandez v. On Time Ready Mix, Inc., No. 14-cv-4306, 2014 WL 5252170,

at *1 (E.D.N.Y. Oct. 4, 2014) (quotation omitted).  Applying this standard, courts have

repeatedly emphasized the "minimal" nature of the burden, as "the determination that the parties

are similarly situated is merely a preliminary one that may be modified or reversed at the second

certification stage."  Anjum v. J.C. Penney Co., No. 13-cv-460, 2015 WL 3603973, at *5

(E.D.N.Y. June 5, 2015) (quoting Kalloo v. Unlimited Mech. Co. of NY, Inc., 908 F. Supp. 2d

344, 346 (E.D.N.Y. 2012)).

In this case, plaintiffs have proposed a collective consisting of "all current and former gas

station attendants at any of the [d]efendants' gas stations located in the State of New York and

for whom payroll was processed by the central office staffed by, inter alia, Ms. BK Sangha."

Plaintiffs rely exclusively on the allegations in the complaint and their own affidavits.  Together,

these documents describe the structure of defendants' business as well as plaintiffs' work at the

Ashburton Avenue station.

The evidence is far from perfect, but it is enough for plaintiffs to meet their minimal

burden of showing that they are similarly situated to the other attendants at the Ashburton

Avenue station.  All three plaintiffs have alleged that they never received overtime and instead

received a flat rate of pay.  Specifically, Sandoz avers that he worked 6:00 AM to 11:00 PM

every Monday, Wednesday, and Thursday, without receiving any overtime pay.  He then started

working the same schedule on Saturdays and Sundays, but still with no overtime.  Rosa offers

even more detail.  He avers that, when he was hired, BK Sangha asked "whether she could give

[him] a falsified pay stub that stated [he] was only working 40 hours per week."  Rosa then avers

that he "routinely worked in excess of 40 hours per week" without overtime compensation.  He

offers a specific example, stating that, between May 19 and May 25, 2019, he worked eight

hours on Sunday, sixteen hours on Tuesday, eight hours each on Wednesday and Thursday, and then nine hours on Friday, totaling fifty-seven hours.[5]

Although the complaint and affidavits do not detail the experiences of other attendants at the Ashburton Avenue station, that omission is not fatal.  Several courts have accepted affidavits from two plaintiffs as sufficient to establish a "common policy or practice of failing to pay overtime."  Elamrani v. Henry Limousine, Ltd., No. 15-cv-2050, 2016 WL 5477590, at *3 (E.D.N.Y. Sept. 28, 2016) (collecting cases).  The question is not one of quantity, but quality, and that very much depends on the facts of the case.  See, e.g., Zhang v. Bally Produce, Inc., No. 12-cv-1045, 2013 WL 1729274, at *4 (E.D.N.Y. Apr. 22, 2013).  In this case, the key fact is the nature of plaintiffs' employment.

First, it helps explain why plaintiffs have failed to name other attendants at the Ashburton Avenue station who never received overtime compensation.  Working as a gas station attendant is a relatively solitary job.  That fact stands in contrast to many FLSA cases, which involve team-based jobs that require frequent interaction.  For plaintiffs in those positions, a court could expect the names of other employees who were subject to a common policy or plan.  See, e.g., Reyes v. Nidaja, LLC, No. 14-cv-9812, 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015) (restaurant workers).  For gas station attendants, that logic carries far less force.

Second, plaintiffs' position is a "commoditized" one, such that an employer would have no reason to treat certain employees in a given location any differently than it treated the others.

---

[5] The remaining plaintiff is Silva.  The amended complaint alleges that he worked more than 40 hours per week "on occasion."  In his affidavit, Silva avers that he typically worked 24 hours per week "with an occasional double shift."  Still, he brings an FLSA overtime claim, based on his allegation that he "was never compensated for any overtime hours."  Although these allegations may ultimately prove deficient, "a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated."  Kassman v. KPMG LLP, No. 11-cv-03743, 2014 WL 3298884, at *6 (S.D.N.Y. July 8, 2014) (quotation omitted).  At this stage, therefore, the Court will not consider whether Silva has a viable FLSA claim.  See id.

See Siewmungal v. Nelson Mgmt. Grp. Ltd., No. 11-cv-5018, 2012 WL 715973, at *3 (E.D.N.Y.

March 3, 2012) (applying this logic to security guards).  Defendants have offered no reason –

and I can think of none – why they would have paid the other attendants at the station any

differently than they paid plaintiffs.  See id.  This inference finds further support in Rosa's

allegation that Sangha asked if she could provide a falsified pay stub.

Defendants fail to appreciate these unique circumstances.  They fault plaintiffs for failing

to "go beyond their own circumstances," yet the cases defendants cite all involved team-based

jobs.  See Zheng v. Good Fortune Supermarket Grp. (USA), Inc., No. 13-cv-60, 2013 WL

5132023, at *5 (E.D.N.Y. Sept. 12, 2013) (supermarket clerks); Barrus v. Dick's Sporting

Goods, Inc., 465 F. Supp. 2d 224, 230 (W.D.N.Y. 2006) (retail).  Defendants also dismiss several

allegations as "conclusory," "unsubstantiated," and "low octane speculation," but the allegations

that defendants cite all concern the other stations, beyond the one at Ashburton Avenue.

Indeed, defendants' main argument is that plaintiffs have "failed to allege sufficient facts

that can possibly give an inference as to a common policy of alleged unlawful pay practice

spanning multiple locations."  I address that below.  But even it was accurate, it does not follow

that plaintiffs have also failed to allege an unlawful policy at the specific location where they

worked.  I thus conclude that plaintiffs have made the "modest factual showing" that they and

the other gas station attendants at the Ashburton Avenue station "were victims of a common

policy or plan that violated the law."  Myers, 624 F.3d at 555 (quotation omitted).

Still, I cannot take the next step, extending the collective to reach the other stations.  In

their bid to include this broad class of employees, plaintiffs rely on two categories of allegations:

their interactions with "Jassy" and the centralized nature of defendants' business.  None of these

allegations are sufficient.

The "Jassy" story appears in identical language in Rosa and Silva's affidavits.  They both

aver:

> Jassy confirmed for me that other employees [who] worked at the Dhillon
> family's gas stations were paid below the applicable minimum wage and never
> compensated overtime or spread of hours.  He also stated that other employees
> were not provided meal and rest breaks, paystubs and any wage notices like
> myself and [the other named plaintiffs].
>
> Based on the foregoing, I learned that the [d]efendants also did not pay other
> nonexempt employees minimum wage or overtime pay for hours worked over 40
> per workweek.

These allegations are nothing more than the kinds of "vague, conclusory, and unsupported

assertions" that courts have rejected as "an insufficient basis for conditional class certification."

Weng, 2018 WL 1737726, at *4 (quotation omitted) ("[I]t is Defendant's policy to not pay any

employees overtime because I have talked with other employees of all types at both of the

locations that I worked."); see also Zheng, 2013 WL 5132023, at *5 ([B]ased on [my] personal

observation, other supermarket clerks were subject to the same time shaving policy.").

When other courts have faced similar allegations, they have declined to extend the

collective beyond the plaintiff's workplace.  Consider Beaton v. Verizon New York, Inc.,

No. 20-cv-672, 2020 WL 5819902 (E.D.N.Y. Sept. 30, 2020).  There, a Bushwick-based plaintiff

sought to include employees at the defendant's Coney Island location in the collective, based on

his allegation that, after a coworker transferred to that location, she reported that the employees

"were also required to work off the clock."  Id. at *1.  I found that allegation insufficient.  In

doing so, I relied on Lujan v. Cabana Management, Inc., No. 10-cv-755, 2011 WL 317984, at *7

(E.D.N.Y. Feb. 1, 2011), in which a New York plaintiff sought to include employees at the

defendants' Florida locations in the collective.  The plaintiff alleged that the Florida employees

"told [him] that they and their co-workers were also not being paid their legal wages and that the

same things that were occurring at [defendant's] New York locations were also occurring at [defendant's] Florida locations." Id.  The court rejected this "scant evidence" as "insufficient." Id.  Jassy's allegations are no different.[6]

Plaintiffs thus fall back on the centralized nature of defendants' business.  As they note, "[c]ourts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work." Rosario v. Valentine Ave. Disc. Store, Co., 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011).  "'[E]vidence of centralization' can allow a 'viable inference' that an employer paid its employees at one location in the same manner that it paid employees at others." Beaton, 2020 WL 5819902, at *3 (quoting Siewmungal, 2012 WL 715973, at *3); see also Karic v. Major Auto. Cos., Inc., 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (reasoning that "common ownership" supports the same inference).

Several of plaintiffs' allegations might seem to fall within this framework.  For instance, they allege that defendants transferred Jassy between stations and that defendants offered to transfer Rosa to another station.  In that regard, this case resembles the ones in which different locations "shared" employees – a fact that supported the inference that those locations also "shared common policies and procedures." Rotari v. Mitoushi Sushi, Inc., 448 F. Supp. 3d 246, 252 (E.D.N.Y. 2020); see also Garcia v. Pancho Villa's of Huntington Vill., Inc., 678 F. Supp. 2d 89, 93–94 (E.D.N.Y. 2010).   But here, the allegations have two important flaws.

---

[6] Defendants have produced an affidavit from Jassy himself.  He identifies himself as Jaswinder Singh, and he avers that he worked at the Ashburton Avenue station for two weekends before quitting.  He acknowledges meeting Silva, but not Rosa or Sandoz.  He denies telling plaintiffs that employees were paid below the minimum wage.  However, "courts in this Circuit regularly conclude that competing declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process," for the court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Anjum, 2015 WL 3603973, at *7 (quotations omitted).

First, "a court has to be skeptical" when a plaintiff's declaration or affidavit "throws around terms that were plainly chosen by the plaintiff's lawyer." Alberto v. Rico Pollo #2 Rest. Corp., No. 18-cv-4762, 2018 WL 6813057, at *3 (E.D.N.Y. Dec. 26, 2018).  Although a court does not make credibility determinations at this stage, Anjum, 2015 WL 3603973, at *7, it need not accept conclusory allegations, and "lawyer-composed" assertions are often conclusory because the plaintiffs do not – and cannot – explain how they came about that information, see Alberto, 2018 WL 6813057, at *3.  Plaintiffs' allegations regarding "executive-level" and "administrative-level" employees, as well as the allegations regarding the centralized payroll system, fall within this category.  See id.

The second flaw is that plaintiffs seek statewide certification "without clarifying how many locations exist."  See Mendoza v. Ashiya Sushi 5, Inc., No. 12-cv-8629, 2013 WL 5211839, at *5 (S.D.N.Y. Sept. 16, 2013).  Plaintiffs have not even offered a ballpark figure, and they provide the addresses for only the Ashburton Avenue station and the Leggett Avenue station.  More obliquely, plaintiffs reference stations "in Hunts Point" and "in Long Island."  But I cannot infer that a uniform policy or plan exists across every station without knowing how many stations there are.  In other words, if plaintiffs themselves don't know enough about defendants' business to even identify other locations, I would be hard-pressed to find that they are all run the same.

The problem is that the breadth of a defendants' business affects what quality and quantity of evidence will establish a common policy or plan.  For only a few locations, the actions of a single manager, or the comments of a few fellow employees, may be enough.  See, e.g., Rotari, 448 F. Supp. 3d at 251–53 (four sushi restaurants).  But "[f]or larger employers, the inference becomes more strained absent broader evidentiary support."  Beaton, 2020 WL

5819902, at *3; see also Anjum, 2015 WL 3603973, at *1, 8–9 (forty-seven department stores).

"In the context of statewide certification under the FLSA, some courts have described this as a

requirement to demonstrate that a 'statewide' policy or practice exists." Hamadou v. Hess Corp.,

915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (quoting Vasquez v. Vitamin Shoppe Indus., Inc.,

No. 10-cv-8820, 2011 WL 2693712 at *3–4 (S.D.N.Y. July 11, 2011)).

In Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 655 (S.D.N.Y. 2013), for example, a

group of gas station cashiers sought conditional certification of a state-wide collective.  The

court declined to venture beyond two New York City boroughs, however, because the plaintiffs

"offer[ed] no evidence – not even hearsay – about stations elsewhere in the New York City

metropolitan area or further upstate."  Id. at 666.  The case involved even stronger evidence of a

company-wide practice, because the plaintiffs' manager allegedly referred to his illegal activities

as "company policy."  Id.  But, as the court observed, other courts in this Circuit "have

repeatedly denied conditional certification of a statewide class (or a nationwide class) where

plaintiffs have alleged that a *de facto* unlawful policy exists, but have only presented facts

pertinent to several locations in a particular region."  Id. (collecting cases).  Here, plaintiffs have

not even done that.

Therefore, I cannot extend the collective beyond the Ashburton Avenue station.  I will

only conditionally authorize this case to proceed as a collective action to include all attendants

who worked at the Ashburton Avenue station during the relevant period.

**B.      Disclosure of Contact Information**

Plaintiffs have also moved for a court order that defendants provide the "complete

contact information" for potential opt-in plaintiffs.  Specifically, plaintiffs seek the "full names,

last known addresses, all known mobile and home telephone numbers, last known e-mail

addresses, work locations, dates of employment, and all known languages spoken" for all "non-exempt employees" that defendants employed in the last six years. When faced with other "overly broad" motions, I have ordered notice only "to the extent necessary to facilitate providing notice by first-class mail and e-mail to viable members of the collective." Rotari, 448 F. Supp. 3d at 255. In this case, defendants shall disclose the names, addresses, email addresses, and native languages of all employees who worked as attendants at the Ashburton Avenue station within the relevant period. Defendants shall disclose this information in a computer-readable format within 21 days of this order.

### C.      The Notice Period

Plaintiffs also request that the information cover all employees who worked as attendants within six years of the filing of the complaint. When plaintiffs bring NYLL claims alongside FLSA claims, courts in this Circuit are split as to whether the notice period should be six years, based on the NYLL's limitations period, or three years, based on the FLSA's limitations period for willful violations. See Lopes v. Heso, Inc., No. 16-cv-6796, 2017 WL 4863084, at *2 (E.D.N.Y. Oct. 27, 2017) (discussing the issue in greater depth). I have already made clear that, in my view, "the better-reasoned approach is for the notice to span only three years," Hanchard-James v. Brookdale Family Care Centers, No. 12-cv-1922, 2012 WL 3288810, at *4 (E.D.N.Y. Aug. 9, 2012), and plaintiffs have not offered any argument that persuades me to reconsider that view.

Defendants propose a two-year period, citing the shorter limitations period that applies when a plaintiff cannot establish a willful violation. See 29 U.S.C. § 255(a). But plaintiffs have alleged willfulness, and the court does not resolve factual disputes at this stage. See Velasquez v. Digital Page, Inc., No. 11-cv-3892, 2014 WL 2048425, at *10 (E.D.N.Y. May 19, 2014)

(rejecting a two-year period).  Therefore, the disclosed information shall cover attendants

employed within three years of this order.

### D.      Reminder Notice

Plaintiffs also seek to send a reminder notice to potential opt-in plaintiffs.  "[T]he weight

of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices

in light of the remedial purpose of the FLSA."  Meo v. Lane Bryant, Inc., No. 18-cv-6360, 2019

WL 5157024, at *13 (E.D.N.Y. Sept. 30, 2019) (collecting cases).  Plaintiffs may mail and email

the reminder notice to potential opt-in plaintiffs 14 days before the opt-in deadline.

### E.      Posting of the Notice

Plaintiffs also move for a court order that defendants "post the notices and Consent to

Join Forms in English, Punjabi and Hindi, in a conspicuous place at all of [d]efendants' gas

stations."  In this circuit, courts "routinely approve requests to post notice on employee bulletin

boards and in other common areas, even where potential members will also be notified by mail,

because it maximizes potential plaintiffs' opportunities to be informed of the pendency of the

litigation and consider whether to opt in."  Beaton, 2020 WL 5819902, at *6 (quotation omitted).

I therefore order defendants to post English, Punjabi, and Hindi versions of the notice and

consent forms in a conspicuous location at the Ashburton Avenue station within seven days of

this order.

### F.      Translations of the Notice

Plaintiffs' final request is for permission to send a certified translation of the original and

reminder notice to potential opt-in plaintiffs in the native languages that defendants identify.

Defendants do not oppose this request, and courts generally "permit notice to be translated into

the mother tongue of non-English speaking groups of potential plaintiffs." Valerio v. RNC

Indus., LLC, 314 F.R.D. 61, 76 (E.D.N.Y. 2016).

### G.     Content of the Notice

Finally, defendants take issue with the notice itself, arguing that plaintiffs "should be

required to disclose attorney's fees information."  A few courts have required plaintiffs to

disclose fee arrangements.  See, e.g., Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317,

324 (S.D.N.Y. 2007).  But a court "has broad discretion over the details of the notice," and I

remain skeptical that the notice must discuss the fee arrangement.  See Beaton, 2020 WL

5819902, at *6 (quotation omitted).  "The notice serves to alert potential plaintiffs that they may

join the collective action; to the extent they have additional questions about costs, they are

perfectly capable of asking counsel or researching the question themselves." Id.  Therefore,

defendants' request is denied.  Because defendants have not objected to any further content, I

adopt the remainder of the proposed notice.

### CONCLUSION

Plaintiffs' motion for leave to file an amended complaint [21] is denied as unnecessary.

Defendants' motion to dismiss the original complaint [17] is denied as moot, but their motion to

dismiss the amended complaint [24] is granted.  Plaintiffs' motion to proceed as an FLSA

collective action and for court-authorized notice [16] is granted in part, in accordance with the

directions set forth above.  Within 7 days of this order, defendants shall post the notice and

consent forms in a conspicuous location at the Ashburton Avenue station.  Within 21 days of this

order, defendants shall disclose the contact information of the attendants at the Ashburton

Avenue station, as set forth above.  Those who wish to participate in this FLSA collective action

must opt in within 90 days of this order.  Plaintiffs may mail and email the reminder notice to

potential opt-in plaintiffs 14 days before that deadline.


**SO ORDERED.**

Digitally signed by
Brian M. Cogan

_____
U.S.D.J.


Dated:  Brooklyn, New York
        December 13, 2020